**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND, LOCAL 103 I.B.E.W. | CASE NO: 1:09-cv-0875 |
| derivatively on behalf of | |
| AMERICAN GREETINGS CORP., | JUDGE O'MALLEY |
| Plaintiff, | |
| v. | |
| MORRY WEISS, *et al.*, | MAGISTRATE JUDGE VECCHIARELLI |
| Defendants, | |
| and | |
| AMERICAN GREETINGS CORP., | REPORT AND RECOMMENDATION |
| Nominal defendant. | DOC. NO. 8 |

Before the Court is the motion of plaintiff, the Electrical Workers Pension Fund, Local 103 I.B.E.W. ("the Local 103 Fund" or "the fund"), to remand the case to state court. **Doc. No. 8**. Defendants oppose the IBEW's motion. **Doc. No. 13**. For the reasons given below, Local 103's motion should be GRANTED.

I.

Local 103 is an Ohio local of the International Brotherhood of Electrical Workers. American Greetings Corporation ("American Greetings") is an Ohio corporation with a principal place of business in Cleveland, Ohio. The individual defendants are current

and former directors and officers of American Greetings. The Local 103 Fund has been a shareholder of American Greetings since November 30, 2003 and brings this action derivatively on behalf of the company. The Local 103 Fund alleges the following in its complaint.

According to the fund, for more than ten years American Greetings has been secretly backdating millions of stock options given to its top officers and directors. Backdating options is a method of varying the start of an option period *post hoc* to increase the value of the option by better fitting the option period to historical increases in market value. Backdating options is a deceptive practice frequently used to conceal increased payments to corporate officeholders without having to report those payments to shareholders. Backdating also violates the terms of American Greetings' stock option plans. The Local 103 Fund alleges that the stock option grants reported in American Greetings' Securities and Exchange Commission ("SEC") filings reveals that the start of the option periods were priced at or near the lowest closing price for a month, quarter, or year so frequently as to occur by chance only at the 0.001 level of significance (*i.e.*, one time in 1,000).

The fund contends that each individual defendant secretly manipulated option periods so as to divert millions of dollars of assets of American Greetings to themselves at the expense of shareholders, participated in the concealment of this scheme, or refused to enforce the company's legal rights to end the scheme and compel disgorgement of diverted funds. It also contends that defendants caused American Greetings to file false and misleading statements in violation of generally accepted accounting principles ("GAAP") with the SEC. These statements asserted that the

options granted by the company had a particular exercise price as of the date of the grant. Since the date of such a grant was later secretly altered to increase its value, according to the fund, statements submitted to the SEC regarding an option's exercise value as of the date of the grant were materially false. The allegedly backdated options were part of more than $38 million in proceeds of sales of stock going to defendants and other company insiders since 1996. This not only wrongfully diverted corporate assets to defendants and caused American Greetings to issue false SEC filings, the Local 103 Fund argues, but is also subjected American Greetings to potential civil and criminal liability from such entities as the SEC and the Internal Revenue Service. The fund alleges that the individual defendants breached their duties of loyalty, good faith, care, trust, and candor by participating in these acts.

On March 20, 2009, the Local Fund filed a complaint against the defendants in state court. The complaint asserted causes of action for breach of fiduciary duty, and/or aiding and abetting such breaches; abuse of control; gross mismanagement; constructive fraud; corporate waste; and unjust enrichment. It sought an accounting, rescission of all contracts for stock options, other equitable relief, and damages from all defendants. On April 16, 2009, defendants removed the action to federal court on the basis of the court's original jurisdiction under **28 U.S.C. § 1331** ("§ 1331"). The Local 103 Fund now moves to remand the case to state court. Defendants oppose the fund's motion.

II.

An action removed to Federal court may be remanded to state court within 30 days of removal pursuant to **28 U.S.C.A. § 1447(c)** on the basis of any defect in the

-3-

removal procedure. Removal statutes are strictly construed. *Wilson v. U.S. Dept. of Agriculture,* 584 F.2d 137, 142 (6th Cir. 1978). "[A]ny disputed questions of fact and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party," *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) (alterations by the quoting court)), and the "removal petition is to be strictly construed with all doubts resolved against removal." *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir. 1989). Defendant has the burden of showing that removal was proper. *Long v. Bando Mfg. of America, Inc.,* 201 F.3d 754, 757 (6th Cir. 2000),

A district court has original jurisdiction pursuant to § 1331 "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). This rule of the "well-pleaded complaint" requires that courts generally look to the complaint alone to determine whether a claim arises under federal law. *Gully v. First National Bank,* 299 U.S. 109 (1936).

Nevertheless, "under limited circumstances, a defendant may force a plaintiff into federal court despite the plaintiff's desire to proceed in state court," *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555, 560 (6th Cir. 2007):

> One exception is the artful-pleading doctrine: plaintiffs may not "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." A related exception is the complete-preemption doctrine: removal is proper "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." A third exception is the substantial-federal-question doctrine, which applies "where the vindication of a right under state law

-4-

necessarily turn[s] on some construction of federal law."

*Id.* (citations omitted). That a federal question might be decided by a state court does not, of itself, warrant a federal court's assumption of jurisdiction over the question. It is not unusual for state courts to decide federal questions, and such courts are presumed competent to do so. *Id.* **at 560-61**.

In the instant case, defendants assert that remand is improper pursuant to the substantial federal question doctrine. The complaint asserts a series of claims arising entirely under state law: breach of fiduciary duty and/or aiding and abetting, abuse of control, gross mismanagement, constructive fraud, corporate waste, unjust enrichment, and common law rescission. The crucial, disputed issue in resolving each of these causes of action is whether defendants secretly and *post hoc* manipulated option periods, helped conceal such manipulation, or acquiesced in it. Defendants argue that plaintiff's complaint raises substantial federal questions regarding whether the following alleged acts constituted a breach of fiduciary duty:

- issuing false financials in violation of **Section 13 of the Securities Exchange Act of 1934**, **15 U.S.C. § 78m**;

- issuing false proxy statements in violation of **Section 14 of the Securities Exchange Act of 1934**, **15 U.S.C. § 78n**;

- failing to comply with the certification requirements of Sections 906(b) and 302(a)(2) of the Sarbanes-Oxley Act of 2002, **15 U.S.C. §7241** and **18 U.S.C. §1350**; and

- causing the Company to violate provisions of the Internal Revenue Code, including §162(m) thereof. **26 U.S.C. § 162(a)**.

Although plaintiff concedes that its state-law claim of breach of fiduciary duty depends in part upon whether defendants violated federal law, it denies that its claim of breach of

-5-

fiduciary duty thereby raises a federal question sufficiently substantial to prevent remand to state court.

The Sixth Circuit's relatively recent decision in *Mikulski* is dispositive of this case. According to *Mikulski*, "The substantial-federal-question doctrine has three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 569. The requirements are expressed summatively; a state law claim must meet all three requirements to constitute a substantial federal question. The court shall examine each of these requirements in turn.

*A.  Whether the state law claim of breach of fiduciary duty necessarily raises a disputed federal issue*

The parties' apparently dispute is centered upon an issue of fact, not an issue of law. Defendants' exhibits[1] and federal caselaw[2] establish that knowing and intentional backdating of documents as alleged by plaintiff violates the reporting requirements of the Securities and Exchange Act of 1934, Generally Accepted Accounting Principals,

---

[1] *See* Linda Chatman Thomsen, "Options Backdating: The Enforcement Perspective" and John W. White, Testimony before the United States Senate Permanent Subcommittee on Investigations, June 5, 2007," Opposition to Plaintiff's Motion, Exhs. G and H.

[2] *See, e.g.*, *In re Zoran Corp. Derivative Litigation*, 511 F. Supp. 2d 986 (N.D. Cal. 2007); *Securities & Exchange Comm'n v. Shanahan*, 2008 WL 5211978 (E.D. Mo. Dec. 12 2008); and *Securities & Exchange Comm'n v. Mercury Interactive, LLC*, 2008 WL 4544443 (N.D. Cal. Sept. 30, 2008); and

the requirements of the Sarbanes-Oxley Act of 2002, and the Internal Revenue Code.[3] Defendants argue that the interpretation of federal statutes and their associated rules and regulations "is a matter of substantial federal concern and where a plaintiff's claims, *however labeled*, require such an interpretation, those claims are properly removed to federal court for disposition." Opposition to Plaintiff's Motion at 10 (quoting *Gobble v. Hellman*, 2002 WL 34430286, at *3 (N.D. Ohio March 26, 2002)) (emphasis by the quoting source).

Defendants fail to explain, however, how a determination of whether defendants have violated the federal statutes at issue hinges upon a particular interpretation of any of these statutes. The first part of substantial-federal-question analysis asks whether the state-law claim *necessarily* raises a *disputed* federal issue. *Mikulski*, 501 F.3d. at 569 (emphasis added). For jurisdiction to arise based upon a substantial federal question, a federal issue must be actually contested rather than merely implicated, the interpretation of federal law must be at issue, and the resulting interpretation of federal law must have the potential either to control many other cases or impair the operation of a federal agency. *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 315-19 (2005); *see also Mikulski*, 501 F.3d at 567. Defendants have not shown that there is any dispute as to the construction of the

---

[3] Such an opinion does not, of course, imply that defendants actually engaged in the alleged behavior or that the alleged federal violations necessarily translate into liability upon state causes of action, which require proof regarding matters beyond a mere violation of federal statutes, rules, or regulations.

-7-

relevant federal statutes. Rather, the case apparently hinges upon whether, as a matter of fact, defendants secretly and *post hoc* altered the starting dates of various grants of stock options.

This differs substantially from the federal issue addressed in *Mikulski*. In that case, the parties disputed whether **26 U.S.C. § 312(n)(1)** required or prohibited the capitalization of certain construction expenses prior to 1985. In other words, the parties in *Mikulski* disagreed as to what the federal law meant; there was no disagreement regarding what the defendants had done. Because the plaintiffs conceded that their claim would fail under defendant's interpretation of the statute, the Sixth Circuit had "little difficulty in concluding that there is a federal issue and it is actually disputed." ***Mikilski*, 501 F.3d at 570**.

There is no current indication that the interpretation of federal law will play any significant role in the parties' dispute. Consequently, it cannot be said that this case necessarily raises a disputed federal issue. Rather, it seems to raise a disputed question of fact. Plaintiff's claim of breach of fiduciary duty, therefore, does not satisfy the first part of the *Mikulski* analysis.

*B. Whether the federal interest at issue is substantial*

*Mikulski* cites the Supreme Court as identifying four factors in determining the substantiality of the federal interest in the matter:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

-8-

*Id.* In conducting an analysis of these factors, "no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id.*

First, this case does not include a federal agency. Thus, consideration of the first factor favors remand.

Second, the nature of the federal question and its importance are not clear. There is no denying that corporate fraud by way of backdating is important to the federal government. Current federal prosecutions and civil actions involving backdating are widespread and are taken seriously by federal departments and agencies. *See, e.g.*, **Thomsen,** *supra*; **White,** *supra*; Securities and Exchange Comm'n, "Spotlight On: Stock Options Backdating" and Conrad Hewitt, Chief Accountant of the Securities and Exchange Comm'n, Letter of September 19, 2006, Opposition to Plaintiff's Motion, Exhs. F and I. But neither plaintiffs nor defendants have identified any applicable federal law, rule, or regulation whose interpretation is problematic or unclear in this case. The analysis of the issue of the importance of the federal question in *Mikulski* is instructive:

> To be sure, resolution of this issue will require the analysis and interpretation of federal law . . . But the specific question at issue concerns only the interpretation of the effective date of an accounting provision that instructs companies on how to adjust their earnings and profits calculations to account for certain construction project interest expenses. This question does not implicate any broader or more substantial issue. The question does not necessarily even resolve all aspects of the present case, and it will provide little if any precedent for future cases. In the 22 years since its enactment, the IRS has never issued a rule to interpret the provision, nor--so far as we are aware--has the IRS ever litigated an action involving this provision. Based on our subjective view of this issue, we find it more likely than not that this particular question is not particularly important to the federal government.

*Mikulski*, 501 F.3d at 570-71. In *Mikulski*, even though the case hinged on resolving conflicting interpretations of federal law, the Sixth Circuit did not regard the federal question as particularly important because the federal question at issue was, at best, arcane. In the instant case, no one has identified a federal question at issue. The case would appear to require the resolution of disputed questions of fact followed by the relatively unambiguous application of federal law to those facts. This matter, therefore, would not seem to be especially important to the federal government as a potential source of precedent or for any other reason. The second factor, therefore, favors remand.

Third, resolution of the federal question will not resolve the case. To the contrary, this case is highly dependent upon the application of Ohio law. Ohio law requires that anyone bringing a derivative action alleging a breach of fiduciary duty against a corporate director or officer must first allow the corporation an opportunity to prosecute the claim or demonstrate that providing such an opportunity would have been futile. *HER, Inc. v. Parenteau*, 147 Ohio App. 3d 285, 291, 770 N.E.2d 105, 110 (2002); *Rice v. Wheeling Dollar Savings & Trust Co.*, 130 N.E.2d 442, 448 (Ohio App. 1954). As plaintiff did not allow American Greetings the opportunity to prosecute the claims it asserts here, plaintiff must demonstrate that providing such an opportunity would have been futile. Moreover, although violations of federal laws, rules, and regulations may be the basis for a breach of fiduciary duty, the burden is still on the plaintiff to demonstrate under Ohio law and by clear and convincing evidence, that the alleged violations were committed knowingly or recklessly and that they harmed the

corporation. **Ohio Rev. Code § 1701.59(D)**. In addition, liability is subject to defenses under Ohio Law, such as the applicable statute of limitations and the discretion of directors to consider factors other than the interests of shareholders and the interests of the corporation. *See* **Ohio Rev. Code §§ 2305.09, 1701.59(E), and *Crosby v. Beam*, 83 Ohio App. 3d 501, 509, 615 N.E.2d 294, 299-300 (1992)**. As resolution of the federal question would not resolve the case, this factor also favors remand.

Fourth, it does not appear that a decision in this case will control a federal question in many other cases. This is not because the issues in this case are anomalous or isolated, but rather because, as already noted, the case does not appear to be a potential source of precedent on any federal question. As *Mikulski* commented, "Whether the interpretation of [the federal law at issue] is resolved in state court or federal court, the outcome will be the same . . . and it is of no consequence . . . whether this case, or any like it, is resolved in federal court rather than the state court." ***Mikulski*, 501 F.3d at 571-72**. Consequently, this factor, too, favors remand.

In sum, none of the four relevant factors indicates that any substantial federal interest is involved in this case. To again quote *Mikulski*,

> This is not to say that there is no federal interest or even some significant federal interest; there may very well be, and it might not be difficult to find. But such a finding would be immaterial. The pertinent finding, which leads to our present conclusion, is that the federal interest in this case is not "substantial" as that term has been defined under the prevailing Supreme Court precedent. If a case could be deemed to "arise under" federal law--and thereby invoke federal jurisdiction--*any time* the litigation involves the interpretation of a provision in the federal . . . code, then [the Supreme Court] precedents . . . would be meaningless insofar as they attempt to define a federal interest (or to guide the inquiry into Congressional delegation of responsibility). Indeed, the portions of the . . . code that expressly provide for a *federal* remedy would be little more than surplusage. We therefore think it would be imprudent to assume that either Congress or the

> Supreme Court intended such an expansive or limitless view of federal jurisdiction.

*Id.* at 572-73 (citations omitted).  Consequently, plaintiff's claim of breach of fiduciary duty does not satisfy the second part of the *Mikulski* analysis.

C.      *Whether the exercise of jurisdiction would disturb any congressionally-approved balance of federal and state judicial responsibilities*

Exercise of jurisdiction in this case would run counter to the congressionally-approved balance of federal and state responsibilities evidenced by federal securities laws.  Congress has long evidenced an intention to permit state courts to decide state causes of action addressing alleged fraud in connection with the transfer of securities.  Both the Securities Act of 1933 and Securities Exchange Act of 1934 have savings clauses preserving such state law causes of action. *See,* 15 U.S.C. §§ 77p and 78bb ("The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist in law or in equity."); *see also New York v. Justin,* 237 F. Supp. 2d 368 (W.D.N.Y. 2002), and *Finance and Trading, Ltd. v. Rhodia,* 2004 WL 2754862 (S.D.N.Y. 2004).  Similarly, the National Securities Market Improvement Act ("NSMIA"), preserved the right of plaintiffs to bring state causes of action for fraud in connection with the sale of securities.  *See Patterman v. Travelers, Inc.,* 11 F. Supp. 2d 1382 (S.D. Ga. 1997), and *Houston v. Seward & Kissel, LLP,* 2008 WL 818745 (S.D.N.Y. 2008).

The most recent congressional attempt to balance state and federal jurisdiction over securities fraud also preserves the right of state courts to hear certain state causes of action regarding the alleged fraudulent transfer of securities.  Congress passed the

Securities Litigation Uniform Standards Act ("SLUSA") in 2000.  In general, SLUSA gives federal courts exclusive jurisdiction over "certain covered class actions" related to securities fraud.  15 U.S.C. § 78bb(f)(1).  The covered actions are those brought by more than fifty people alleging fraud in connection with a security nationally traded and listed on a national exchange.  15 U.S.C. § 78bb(f)(5).

SLUSA includes, however, certain exceptions to its pre-emption.  In particular, SLUSA includes the "Delaware carve-out," which, for the most part, exempts class actions pursuant to state law from the pre-emptive sweep of SLUSA when those actions involve a corporation incorporated under the law of the forum state.[4]  15 U.S.C. § 78bb(f)(3)(A).  SLUSA directs federal courts to remand an action to state court if they find that the action would otherwise be covered by SLUSA but falls within the exception of the Delaware carve-out.[5]  15 U.S.C. § 78bb(f)(3)(D).  The instant case falls within the Delaware carve-out pursuant to the following exception:  "[T]he term 'covered class action' does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation."  15 U.S.C. § 78bb(f)(3)(C).  The effect of this exception is to exclude derivative suits brought pursuant to state law, such as the

---

[4] The "Delaware carve-out" applies to all cases brought pursuant to state law and alleging a fraudulent transfer of securities, not merely those brought pursuant to Delaware law.

[5] Defendants argue that as the instant case was not brought pursuant to SLUSA, SLUSA's exception for state derivative cases does not require the court to remand. However, plaintiff's point in discussiing SLUSA was not to trigger the automatic remand provision of SLUSA.  The point was to evidence Congress's continuing intention that state causes of action for fraud brought in state court, when not within the federal courts' diversity jurisdiction, should stay in state court.

instant cae, from the pre-emptive sweep of SLUSA.

In sum, for more than seventy years Congress has consistently preserved the right of plaintiffs to adjudicate in state courts derivative causes of action alleging fraud in the sale of securities and brought pursuant to state law.  Thus, Congress intended that actions alleging fraud in the transfer of securities brought exclusively pursuant to state causes of action, and not falling within the federal courts' diversity jurisdiction, remain in state courts.  This factor requires remand of the instant case.

### III.

Defendants cite *Landers v. Morgan Asset Management, Inc.*, 2009 WL 962689 (W.D. Tenn. March 31, 2009); *In re:  The Goodyear Tire & Rubber Co. Derivative Litigation*, Case No. 5:03-cv-2180 (N.D. Ohio 2003); and *Gobble v. Hellman*, 2002 WL 34430286 (N.D. Ohio 2002), for the proposition that state causes of action for fraud in connection with the sale of securities should not be remanded if they allege violations of federal law because such allegations create federal question jurisdiction.

This court is not persuaded by the analysis in *Landers.  Landers* is contradicted by such cases as *Adams v. Amdahl*, 2006 WL 2620400 (W.D. Wash. Sept. 12, 2006), and *Ekas v. Burris*, 2007 WL 4055630 (S.D. Fla. Nov. 14, 2007), both granting the motion to remand.  The *Ekas* court summarized the prevailing point of view of those courts granting the motion as follows:

> [P]assing references to federal law are not essential to proving any of the elements of the state causes of action. To the contrary, the duty to comply with federal laws was one of many duties that were allegedly breached by Defendants.  But the gravamen of the breach of fiduciary duty rests on the director Defendants "knowingly approving the Company's violation of GAAP" when they rubber stamped the improper request by the officer Defendants to

>backdate stock option grants.  Significantly, GAAP violations are not the exclusive province of federal law and state law claims can, of course, be based on GAAP violations.  Furthermore, state law requires that officers and directors of corporations act in good faith to the corporation and the shareholders.  Clearly, in proving that a breach of fiduciary duty occurred, Plaintiffs may point to evidence that the officers and directors failed to act in good faith when they made false statements.  But the fact that some of those false statements were made to the SEC and may have violated federal law is tangential to proving the breach of fiduciary duty.

*Ekas,* 2007 WL 4055630 at *4 (citations omitted).  *Accord Firefighters' Retirement Sys. v. Regions Bank,* 598 F. Supp. 2d 785 (M.D. La. 2008); s*ee also In re The Reserve Fund Securities and Derivative Litig.,* 2009 WL 3634085 (S.D.N.Y. Nov. 3, 2009) (adopting similar reasoning when faced with somewhat differing state causes of action)*, and Roskind v. Morgan Stanley Dean Witter,* 165 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001) (adopting similar reasoning upon a motion to remand state law claims for breach of fiduciary duty and unfair business acts against plaintiff's broker).  The reasoning in *Ekas* is in greater accord with the Supreme Court's holdings in *Gable* and *Empire* than is the reasoning in *Landers.*  Both Supreme Court cases held that defendants must demonstrate more than an alleged violation of federal law if they are to prevail upon a motion to remand to state court.

Defendants cite *Goodyear* and *Gobble* for the proposition that state causes of action for fraud in connection with the sale of securities that also allege violations of federal law, create federal question jurisdiction and should not be remanded.  This argument ignores the fact that both *Goodyear* and *Gobble* were decided prior to *Mikulski* and that *Mikulski* explicitly held to the contrary.  Consequently, both *Goodyear* and *Gobble* have been superceded on this point.

-15-

IV.

For the reasons given above, plaintiff's motion to remand should be GRANTED.


Date: January 28, 2010 　　　　　　　　　　　/s/ *Nancy A. Vecchiarelli*
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See United States v. Walters, 638 F.2d 947 (6th Cir. 1981). See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111.**